UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL. EDWARD R. WASHINGTON, III | CIVIL ACTION |
| VERSUS | NO. 09-7244 |
| CITY OF NEW ORLEANS | SECTION "K"(2) |

## ORDER AND OPINION

Before the Court are the "Motion to Dismiss Pursuant to FRCP 12(C) or, Alternatively, for Summary Judgment Pursuant to FRCP 56" filed on behalf of defendant City of New Orleans ("City")(Doc. 13) and the "Motion for Summary Judgment" filed by plaintiff Edward R. Washington, III, individually and on behalf of the United States (Doc. 28). Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, GRANTS the City's motion for summary judgment and DENIES plaintiff's motion for summary judgment.

Background

Yearly from 2000 until 2010, the City applied to the United States Department of Housing and Urban Development ("HUD") for funding including Community Development Block Grant ("CDBG") funds. For each of those years the City apparently received CDBG funds. In 1999, and again in 2010, the City submitted an "Analysis of Impediments to Fair Housing" ("AI") to HUD. Additionally, each year from 1999 to 2009 the City submitted to HUD a "Consolidated Annual Performance Evaluation Report" ("CAPER").

Pursuant to 31 U.S.C. §3730(b)(1)[1] Edward R. Washington, III filed suit for himself and the United States asserting claims under the False Claims Act ("FCA"), 31 U.S.C. §3729(a)(1). Plaintiff's complaint consists of sweeping, conclusory allegations. Mr. Washington alleges that "[t]he City was required to conduct an Analysis of Impediments annually so that it could truly certify that it was satisfying its obligation of affirmatively further [sic] fair housing." Doc. 1, p. 9, ¶31. Additionally, plaintiff alleged:

> 36.
>
> For a decade, from 2000 through 2009, the City did not analyze fair housing.
>
> 37.
>
> For an entire decade, from 2000 through 2009, the City of New Orleans did not analyze how its placement of affordable housing affected segregation and racial or ethnic diversity.
>
> 38.
>
> For an entire decade, the City of New Orleans did not undertake any analysis of whether the production of affordable housing, prior to and during the relevant time period, had the effect of increasing or decreasing racial or ethnic diversity in the neighborhoods in which the housing was built.
>
> *The City of New Orleans Did Not Take Actions to Overcome the Effects of Discrimination and Segregation on Fair Housing*
>
> 39.
>
> For an entire decade, which is the relevant time period, the City of New Orleans did not take appropriate actions to overcome the effects of discrimination and segregation on fair housing choice.

---

[1] Title 31 U.S.C. §3730(b)(1) provides in pertinent part that "a person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government."

Plaintiff contends that despite the above described failures from 2000 - 2009, the City, in connection with obtaining federal funds, submitted false statements to HUD stating that it would affirmatively further fair housing and presented false claims for payment to the United States stating that it would affirmatively further fair housing in violation of 42 U.S.C. §5311(b). Additionally, plaintiff's complaint alleges claims for common law fraud, unjust enrichment, and payment under mistake of fact. As was its right pursuant to the FCA, 31 U.S.C. § 3730(b)(4)(B), the United States declined to intervene in this claim. Doc. 11.

Defendant City filed this "Motion to Dismiss Pursuant to FRCP 12(c) or Alternatively, For Summary Judgment Pursuant to FRCP 56" (Doc. 13). Plaintiff Edward R. Washington, III failed to timely file an opposition to defendant's motion. Mr. Washington did however file a "Motion for Extension of Time to Plead" (Doc. 16). The Court granted that motion and gave Mr. Washington an additional five days to file his opposition. Despite that extension, plaintiff failed to file an opposition to defendant's motion.

On the same day that plaintiff filed his "Motion for Extension of Time to Plead" he also filed a "Motion for Summary Judgment" (Doc. 28). The City timely filed its opposition to plaintiff's motion for summary judgment.

Rule 12(c) of the Federal Rules of Civil Procedure specifically provides that "if . . . matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." In conjunction with its Rule 12(c) motion for judgment on the pleadings, defendant submitted various

matters and documents which were outside the pleadings for consideration, and alternatively filed a motion for summary judgment. Plaintiff was allowed additional time to oppose the defendant's motion, including the alternative motion for summary judgment. Therefore, the Court will analyze defendant's motion as one for summary judgment.

Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996), citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).

"A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007) quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment evidence must be "viewed in the

4

light most favorable to the nonmovant, with all factual inferences made in the nonmovant's favor." *Bazan ex rel Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513.

> [C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment. The Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim.

*RSR Corporation v. International Insurance Company*, 612 F.3rd 851,857 (5th Cir. 2010).

## Law and Analysis

An applicant for a grant of federal housing and community development-related funding, including CDBG funds, must certify to HUD, among other things, that "the grant will be conducted and administered in conformity with the Civil Rights Act of 1964 [42 U.S.C. §2000a et seq.] and the Fair Housing Act [42 U.S.C. §3601 et seq.], and the grantee will *affirmatively further fair housing*." 42 U.S.C. §5304(b) (emphasis added). A key component of plaintiff's claims is that the City failed to conduct an AI annually. However, plaintiff does not cite, nor did the Court locate any legal authority mandating that a grant applicant or grantee file an AI annually. In fact, Chapter 2 of HUD's Fair Housing Planning Guide states that "HUD suggests that jurisdictions conduct or update their AI at least once every 3-5 years (consistent with the Consolidated Plan cycle)." Doc. 31-1, Ex. 1, §2.2 1. In the absence of evidence requiring that an AI be filed annually, the City's failure to do so is not relevant in considering any party's entitlement to summary judgment.

## FCA Claims

To prevail on a claim under the FCA, 31 U.S.C. §3729(a)(1), plaintiff must prove that defendant City "knowingly present[ed], or cause[d] to be presented, to an officer or employee of the

5

United States Government . . . a false or fraudulent claim for payment . . ..." Under the FCA "knowingly" means:

> that a person, with respect to information–
> (1) has actual knowledge of the information;
> (2) acts in deliberate ignorance of the truth or falsity of the information; or
> (3) acts in reckless disregard of the truth or falsity of the information.

31 U.S.C. §3729(b). Additionally, "a false or fraudulent claim or statement violates the FCA only if it is material." *United States. ex rel Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 467 (5th Cir. 2009). In determining whether liability under the FCA is established, it must be determined "(1) whether there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material, and (4) that caused the government to pay out money or forfeit moneys due (i.e., that involved a claim." *United States ex rel Wright v. Comstock Resources, Inc.*, 2011 WL 6359893 (C.A. 5 (Tex.)), quoting *United States ex rel Longhi v. Lithium Power Techs., Inc.,* 575 F.3d at 467.

In support of its motion the City filed into the record the 2010 AI as well as the CAPERS for 1999-2009. The CAPERs summarize the City's efforts related to housing and community development in a number of areas including "Affirmatively Furthering Fair Housing." Doc. 14, Ex. 2. These reports reflect the impediments to fair housing choice set forth in the 1999 AI and outline a wide spectrum of actions implemented to overcome the identified impediments. Some of the actions undertaken between 1999 and 2009 to overcome the identified impediments include:

- providing educational opportunities regarding the need for fair housing to local government employees, housing consumers, and housing providers;
- initiating lawsuits to enforce fair housing laws;
- improving monitoring of the execution of fair housing laws;
- investigation of complaints of violations of the fair housing

6

laws; and
- selection of an entity to produce an AI in 2010.

Considering the actions described in the 1999 - 2009 CAPERS which were taken to overcome the impediments identified in the 1999 AI, the City has met its burden of identifying the portions of the record which demonstrate the absence of a genuine issue concerning whether the City affirmatively furthered fair housing. In the face of the evidence presented by defendant, plaintiff was obligated to come forward with specifics facts showing that there is a genuine issue of material fact for trial.

Although plaintiff failed to file an opposition to defendant's motion, it is apparent from plaintiff's own motion for summary judgment that plaintiff relies on *U.S. v. Westchester County, N.Y.*, 668 F.Supp. 2d 548 (S.D. N.Y. 2009) to urge that the City made a false statement when it certified that it was affirmatively furthering fair housing. In *Westchester*, the district court held that an AI must analyze impediments to fair housing that are related to race. Then, after reviewing the evidence submitted in connection with the cross-motions for summary judgment on the FCA claim, the district court concluded that there was no genuine issue concerning whether the County of Westchester analyzed race in conducting its AIs. *Id.* at 561-62. The Court does not find *Westchester*, which is not binding precedent in this district, to be dispositive in this case because it can be factually distinguished.

The 1999 CAPER lists impediments to fair housing which were included in the 1999 AI. Unlike the impediments enumerated in *Westchester*, a number of the impediments listed in the City's 1999 AI focus on race:

- Impediment No. 6: The City of New Orleans and its surrounding suburbs are becoming more, rather than less segregated;

- Impediment No. 8: The Section 8 program has resulted in an increased segregated housing pattern;
- Impediment No. 14: "Advertising of housing opportunities that indicate a preference on the basis of race or other protected classes helps cement already existing notions of who is welcome where. Such notions certainly perpetuate segregation";
- Impediment No. 15: "Racial discrimination in the rental housing market persists"; and
- Impediment No. 21: "The city has a low home ownership rate, with African American neighborhoods having the lowest rates of home ownership."

Doc. 14-1, p. 5-9. The 1999 AI set forth plans to combat these impediments which included, among other things, support of fair housing education, education of housing industry members and landlords, and support funding of fair housing enforcement efforts to deter future discriminatory events. Id. The CAPERs for the years 2000-2009 reflect that the City took numerous actions to overcome the impediments to fair housing choice identified in the 1999 AI. Therefore, contrary to the facts in *Westchester*, here the defendant has undertaken an analysis of race-based impediments to fair housing and has taken steps to overcome those impediments.

Given the defendant's evidence of its actions to affirmatively further fair housing and plaintiff's failure to come forward with specific evidence of a false statement, defendant is entitled to summary judgment on plaintiff's claims under 31 U.S.C. §3729(a)(1).

Defendant is also entitled to summary judgment on plaintiff's other under the FCA, specifically 31 U.S.C. §3729(a)(1)(b), which creates liability for any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." Plaintiff's failure to provide evidence of a genuine issue concerning the City having made a false statement similarly dooms this claims.

Plaintiff also filed a claim against the City under 42 U.S.C. §5311(b) which permits a civil

action to be brought against a recipient of community development funds who has "failed to comply substantially with any provision of this chapter. . .." Plaintiff has not offered any evidence raising a genuine issue with respect to whether the City failed to comply substantially with the requirements imposed upon recipients of community development funds. Therefore, defendant is entitled to summary judgment on this claim as well.

### Unjust Enrichment

Article 2298 of the Louisiana Civil Code provides, in pertinent part, that:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. . . . The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

The requisite elements of a claim for unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) an absence of justification or cause for the enrichment and impoverishment, and (5) no other available remedy at law. *Baker v. Maclay Props. Co.*, 648 So.2d 888, 897 (La. 1995). "The unjust enrichment remedy is 'only applicable to fill a gap in the law where no express remedy is provided.'" *Walters v. MedSouth Record Management, LLC*, 38 So. 3rd 243, 244 (La. 2010), quoting *Mouton v. State*, 525 So.2d 1136, 1142 (La. App. 1st. Cir. 1988). As noted above, the FCA provides remedies for the making of false statements and false claims for payments. The availability of alternative remedies under the FCA bars plaintiff's recovery under the theory of unjust enrichment.

### Common Law Fraud and Payment Under Mistake of Fact

To prevail on a claim of common law fraud the following elements must be established: (1) a material representation was made; (2) the representation was false; (3) when the representation was

9

made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the representation was made with the intention that it be acted upon by the other party; (5) the party acted in reliance upon the representation; and (6) the party suffered injury. *United States ex rel Grubbs v. Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009). As with his other claims, plaintiff has failed to offer competent summary judgment evidence that defendant made a false material representation. In the absence of such evidence plaintiff has failed to raise a genuine issue with respect to the common law fraud claim, and defendant is entitled to summary judgment.

Defendant is similarly entitled to summary judgment on plaintiff's claim for payment under mistake of fact. Plaintiff has failed to present any competent evidence of a payment under a mistake of fact. In the absence of such evidence, there is no basis for plaintiff's claims. Accordingly,

**IT IS ORDERED** that the "Motion for Summary Judgment" filed by plaintiff Edward R. Washington, III, individually and on behalf of the United States, (Doc. 28) is DENIED;

**IT IS FURTHER ORDERED** that the "Motion to Dismiss Pursuant to FRCP 12(C) or, Alternatively, for Summary Judgment Pursuant to FRCP 56" filed on behalf of defendant City of New Orleans ("City")(Doc. 13) is GRANTED.

New Orleans, Louisiana, this 19th day of March, 2012.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE